May it please the Court. My name is Carlo Rolando, and I represent Anthony Barron in his appeal from the denial of his habeas petition in the Northern District Court. I took his case a couple years ago because I can't answer the same fundamental question that he has, even though I'm a lawyer and I'm supposed to be able to. And that is how the 6th District could find a number of errors in his case which affected his ability to present his own defense, and yet find that the errors did not rise to the level of requiring giving him a new trial. I think that the 6th District's analysis, as in the same way the Attorney General's analysis does, actually takes advantage of the error to find that it was harmless. And that is inconsistent with all precedent that I'm aware of with respect to any prejudice analysis. What do you mean by takes advantage of the error? Well, Mr. Barron was trying to establish that Officer Rodriguez, the lead arresting officer, kicked him, you know, three times while he was semi-unconscious, is how the court of appeals labeled it, and actually never really saw a knife. That he came up with the idea of a knife afterwards to try to prevent himself from having any sort of adverse consequence, whether it be, you know, prosecution or some sort of administrative problem. And that the court of appeals, the 6th District, reasoned that, well, had that come in, it would be fair to assume the jury could infer, in fact, that all the officers were willing to, as the 6th District put it, fudge the truth to support a fellow officer in that sort of position. It seems to me that if you're willing to say that all the fellow officers might be willing to fudge the truth to support an officer who perhaps used excessive force in that instance and needed to come up with something, I mean, that's the defense theory. That it's inconsistent to then rely on the testimony from those cooperating officers to say that there's enough evidence to support the conviction. If office – if they're backing him and going with him on this, then their testimony is also impugned. So let me review the batting. What we have here is a holding by the California court of appeal that there was a violation of the confrontation right. So I'm not going to interfere with that. If the California court of appeal has found a constitutional violation, I think I'm allowed to, maybe even required to, defer to that, given the way this case comes up. So the question is harmless error. Is this a straight Brecht question? Do we just apply Brecht straight up, or do we have to give deference to the holding of the California court of appeal that the error was harmless? Well, I do believe it's kind of a convoluted situation. When you look at the argument that was presented by the Attorney General, which is what I think you're hinting to, you're relying on, is he points to some language in Van Arsdale that says, well, this is witness-specific. And because it's witness-specific, you cannot look to harm that goes beyond. If you actually look to the particular page that was cited there, Van Arsdale is actually trying to make the standard easier to apply. I think, Judge Fletcher, at least the way I heard the question was slightly different. It was not – has nothing to do with this particular case. It's just more generally, when we get a State court decision that has found constitutional error but has deemed it – has determined it to be harmless, what's the standard of review that we apply to that as a Federal court? Well, you do do a Brecht test, and it is de novo. You just think it's straight Brecht, no deference? Because I have to say, I might come out differently depending on which standard applied. If we have to give deference to – in the way that we typically do under Harrington v. Richter, to the State court's finding that this error was harmless, that seems to me one – one scenario. Much different if we're just applying Brecht straight up. And I could see that actually making a difference, perhaps, in this case. So I – I understand why you're saying we should apply Brecht straight up. That seems to be, to me, more favorable for you. But what's – what authority do we have on that point? Well, I – really, in looking at it, I think you – there was a opinion cited, actually, in the Attorney General's brief. I think it might have been footnote 7, noting that whenever you have these, you're supposed to apply the Brecht standard. Supposed to apply? The Brecht standard. The Brecht or Brecht? Brecht. Brecht? Yeah. I pronounce the H in Mazah. I just fundamentally – I look at this, and if we're going to follow their reasoning and analyze their reasoning and really say, well, what is the full effect that impeachment would have provided? And the court of appeals gives it to us. It says, it's very clear that the – whatever credibility problems that – that the officer Rodriguez would have, they kind of go through the other officers. And while the court of appeals was very kind in its – in its language, it – it was still willing to do what you don't see a lot of in – in court of appeals decisions, and that is point out to say that officers perhaps are fudging the truth, that they were not entirely consistent. Let me put the question to you this way. I guess if – even if you give full effect to the impeachment value of, you know, if your client had been allowed to bring out the fact that Officer Rodriguez maybe had used excessive force in the way that's described, I guess the inference that that would have compelled him or motivated him to make up the whole thing about the knife just seems to me a relatively weak one. It's not implausible, I can understand it, but, I mean, maybe you can just articulate if you had been trial counsel, how would you have used the fact that he had kicked him three times at arrest to such devastating effect that, you know, basically the, like a, you know, row of dominoes, the credibility of all of the officers would have fallen. I just don't quite see that. Well, I think, first of all, Officer Rodriguez and Officer Campagna, although members of the gang task force were particularly close, they were regular partners. So trial counsel, and this is noted in the Sixth District Court of Appeals opinion – don't have the page number, but it's in the upper right-hand corner – that trial counsel was specifically trying to hit Rodriguez and Campagna at the same time because they're so closely linked together. Why is that so critical? Because it's Officer Rodriguez and Campagna that go back to these, the lay witnesses' houses to try to get testimony out of them. And all of the lay witnesses, if you exclude all the police, they say, no knife, the victim says he wasn't stabbed, and that the police put those statements on them and made them up. So they specifically deny their inconsistent statements, which, because these officers, because we're not imputing, because the Sixth District wasn't willing to impute that concern with respect to the credibility across the board to all the officers, you're still willing to give those statements as, in fact, accurately having been made. Let me put it differently, because I don't think you were responding to my question or at least my statement. I remember the facts that your client is on the ground. The officer says he can't see his hands, right? And he's, I guess, facedown at that point. According to the officer, he's just seen this gentleman involved in a fight, doesn't know if he's armed. Just forget about the knife, even if he never made up the story about the knife. I mean, isn't he still going to be justified in being concerned that your client might have been armed? And so, okay, he admits, yeah, okay, I kicked him. I was trying to get him to turn over whatever so I could see his hands before going in to arrest him. It seems to me he doesn't need to make up a story about having seen a knife to justify the actions he took upon the arrest. That's why, to me, the inference that you want to draw from the three kicks to, well, that explains why he made up the story about the knife. It just seems to me it's a relatively weak one. And that's why, I guess, I assume the California Court of Appeal was ultimately willing to say, you know what, even if you had been able to bring out that fact, it's not like it would have just obliterated the credibility of all the officers. You know, I understand, and they did use that language, relatively weak. But fundamentally, I'm looking at a client who says, that's my theory. That's my case. Let me present it, and let's see if the jury buys it or doesn't buy it. And to sort of, after the fact, say, well, okay, we denied you your Sixth Amendment right to cross-examination, and that was your theory. But we don't think it holds water. So, you know, no harm here. Have a nice day. I think that that fundamentally is the problem. That no, it is the problem. I mean, that's why these harmless error cases are so tormenting. We – there was constitutional error. It should have been admitted. You're right. He had a right to present his defense that included impeaching the officer with this, and his right was denied. And I might ask the State, you know, why are you trying to keep that out? Why are you trying to keep it out? Because you didn't think it was going to do your side any good. So there's a fundamental problem here whenever you have a violation of a right, and then you try to deal with it with harmless error. But I have to say, I'm kind of with Judge Watford on this one. I have trouble seeing how that cross-examination would have been so devastating or even so undermining as to really put to one side the other testimony we have in the case. And the lay testimony, you know, you know these cases as well as I do. The lay people involved in these cases are often very afraid of retaliation and being labeled snitches. So for them to say one thing and then later say, you know, I didn't see a knife, or that happens. I understand. And my time is up, but can I comment? Please do respond. And we will give you a chance to respond after we've heard from the State. Thank you. I just think that ultimately that analysis is one for the finder of fact. I mean, it becomes a bit muddled when we're looking at the harmless error analysis because one wants to sort of take that leap into credibility. But I think that ultimately it's up to the finder of fact if we assume that the police officers would have been discredited. And I'll end it so that. Let's hear from the State, and we'll give you a chance to respond. Thank you. Jeff Lawrence for Respondent. May it please the Court. Were you the trial attorney? I was not the trial attorney, no. Strictly the appellate attorney. And just to address that last point, I think one thing that, while we concede that there was a competition clause violation in this case, I think. Can you tell me, was the error produced because the State objected to the introduction of the evidence? Oh, yes. Yes. Yeah, sure. That's what I thought. So why is the State doing that? Well, I think that. The error seems to me pretty obvious. I think that if you look at the trial record, what was going on is that the State and the Court thought that, as was suggested, and I don't mean to put you in a position of the State in this case, but that this was sort of a side issue that was really a triviality in light of the grand picture here that would distract the jury. It was a threefold. Every impeachment is a side issue. Yes, Your Honor. And again, I'm not here to defend what happened in the trial court. I'm merely trying to give it some context. And that is that it was not deemed a significant point, and because of the potential for confusion. If there wasn't a significant point, it's going to take two minutes of trial time to ask the question, get the answer, and spare you this appeal. So let it in. And I'm not disagreeing with the Court at all. And that's not a. Well, go back to the guy who tried the case and say, let it in. Don't object. Let them try their case. I can certainly convey that, Your Honor. Well, let me just kind of question the premise that you want us to start from. I mean, Rodriguez, that's the lead officer in question. I mean, he is the only witness who supposedly sees a knife and, you know, combines it with Mr. Barron stabbing someone. The other people are a little bit, you know, I mean, they're not as definitive as Dr. Rodriguez. There isn't the purity of identifying it as a knife. You have a stabbing instrument, a shining object, or an object that's either a knife or a screwdriver. He's the most definitive about it being a knife. But ultimately, whether it's a knife or not is not the key question. It's whether or not there was a stabbing instrument used on the victim to inflict the injuries, which were then photographed, et cetera. Now, and again, I don't want to defend the exclusion of the impeachment. That's not why I'm here. But I think that in the grand picture, for the same reason why the State court of appeal has said that ultimately this didn't rise to the level of harmless beyond a reason of a or exceeded beyond a reasonable doubt that it was harmless, was because of the sort of tangential nature of those kicks in at the first stage of impeachment against this particular officer, but then against whether it could apply to any of the other three officers who testified consistently, the detective who then did interviews of other witnesses who acknowledged that there was a stabbing, the photographs. So let me ask you this just in terms of the court of appeal, I think, or maybe it was in your brief, you know, kind of try to characterize this as, well, even putting Officer Rodriguez's testimony aside, this was a relatively strong case for the State. And I guess I question that, too, because it seemed to me significant that they never found this supposed knife, notwithstanding the fact, tell me if I'm wrong on this, that they basically had Mr. Barron in their line of sight the whole time from the place where the stabbing allegedly occurred to where they arrested him. So there was a pretty finite area in which to look for the knife, and they never found it. That seems suspicious right off the bat. And second, the victim did not have, if I remember, physical injuries at all consistent with Officer Rodriguez's testimony. If you believe Officer Rodriguez, the guy would have been, you know, slashed up and covered in blood, and he had barely any kind of stab – I don't even remember any stab wounds. No. He had a cut to his head that was bleeding, a cut over his eye. Which might have been consistent with some kind of blunt force, not like a slash across the forehead. There was also a cut to his arm and a slash on his back. Well, there was a scar that was weeks later, and he said that he got it at work. But am I right that Rodriguez was saying the guy was basically just stabbing away? At one point, he was coming down on the guy. Yeah. Well, all three of them. So he had no evidence of blood on his shirt or anything. Well, all three officers – all four officers, excuse me – described him thrusting and stabbing at the victim. So, you know, I think that – Which is why, to me, it just seems like a really weak case for assault with a deadly weapon. Certainly a good case maybe for a fight, you know, and maybe he was using his fist. But this whole notion – that's why, to me, the need to make up a story about the knife, it's not tangential. It's not some collateral thing. It's – I mean, it only makes sense that whether it was a knife or not is going to be the key issue in the jury's mind, right? Well, obviously, yes, whether or not there's a knife, because there was a – it was assault with a deadly weapon, and there was a deadly weapon use enhancement. But you also have Felix, the defendant's friend, saying that – I'm sorry, the victim's friend saying, yeah, he was getting stabbed, and I jumped in to help him out, told Detective Campagna that. So you have an entirely separate corroboration of the stabbing and the knife through one of the participants who was actually trying to assist the victim. You had the victim making similar comment or making more obscure or obtuse comments during an interview with Detective Campagna. So there are – Didn't all the lay witnesses recant? They did recant, yes. I don't even know if they ever made the statements, but they certainly at trial testified – I never said that, right? Yes. So again, they'd have to – the jury would have to believe the officers to credit that testimony in any way, right? Well, they would have – now you have to bring in another party to the conspiracy to Detective Campagna who wasn't part of the four who were at the place, who wasn't part of the arrest, but there's no indication he had any idea that the kicks occurred at the time of the arrest. So really, in order to make it hold together, in order to go from the three kicks to the no knife to the grand conspiracy to make up a knife, you have to bring in more and more individuals who were unrelated to the original arrest. And at some point, it just – it becomes gossamer thin to – to link up that conspiracy to say that that impeaches the entire conviction. But it's not very hard, actually, to bring in somebody like Campagna, even though he himself was not involved in the initial witnessing or whatever. I mean, he understands from his fellow officers that's their theory of the case. And not unnaturally, an officer who understands from his fellow officers that this is the theory of the case, he can't rely on that theory until he gets evidence that convinces him otherwise. And even sometimes when he gets evidence that goes against it, he'll stick with his buddies. I mean, that's the case. But that also assumes that he's now lying on the stand. It's not just a matter of his buddy's theories, because now he's – in order to accept that theory, he has to affirmatively lie about what he's claiming Felix said about the stabbing. So you don't have a conspiracy to say, well, I'll – I'll shade my testimony to support your theory. It's I will make affirmative statements, affirmative lies to put words in a third-party witness's mouth, notwithstanding that we plan on calling him to the stand. Well, let me talk as just sort of practical intuition about cases. I mean, we've seen a lot of these over the years. Juries tend to believe police officers. If you've sat on the bench for a number of years, you're not quite so credulous as the jurors often are to the police officers. Many police officers tell absolutely the literal truth, but some do not. You have a built-in advantage in front of a jury because of the jury's tendency to believe the cops. And you want to increase the advantage by keeping out any impeachment information. I just – it just doesn't – I just don't like it. And I understand that. And I would just point out that the fact that no knife was found was fully presented to the jury. So the potential to raise the defense was fully presented. All that was omitted, all that was excluded, that was withheld from the jury, was the three kicks. So the question really is, can you take the three kicks and build the edifice of a grand conspiracy by the officers? Let me come back to the legal question. As I read your brief, you say the standard on which we review harmlessness of the error is brecked. Well, and let me clarify this, because I think it's an important point. What Frye – what we quoted Frye as saying is that the two standards, that the Brecht standard essentially subsumes the – in most cases, in the run-of-the-mind case, it will subsume the reasonable application of Chapman. But Brecht also, you know, correctly cited Medchel v. Esparza, which requires that you also show an unreasonable application of Chapman. So you have to go through both tests in order to – Kagan. I got that, but I'm asking you a slightly different question. That was the question that Judge Watford clarified a moment ago with your adversary. And that is, as I read your brief, you don't say that we are required to defer to the State court's application of Brecht. We simply apply Brecht. I think you have to do both. That's not what your brief says. Well, we cite Frye for the principle that they – that Brecht subsumes the – the unreasonable application of Chapman in most cases. So you can go straight to Brecht on the assumption that – and maybe my assumption was too cavalier – that Brecht will be more error-tolerant in this particular case. If this Court feels there is a difference in applying one standard to the other, it must apply both. And if you – if you determine that relief is not appropriate by applying a reasonable application, by looking to deference to the State's application of Chapman, then you cannot grant relief. If you look straight to Brecht and you find that relief is not appropriate, you cannot grant relief. But you can't go straight to Brecht if there is the possibility, if this Court considers a different result would occur if it gives deference to the State court's application of Chapman. You have to pass through both tests. Now, in most situations, and this is what Frye was saying, that standard will – the test will get you the same result. The latter will subsume the former, and the latter is easier to apply. But it's like a Chapman analysis. You can go straight to prejudice and say there's no prejudice. You don't need to determine whether or not there was ineffective assistance. But you can't reverse unless you find both prongs. And our position, and I want to make this absolutely clear, and if the Court has any questions about it, I'd be happy to file some further briefing on it, you have to find – you have to pass through both tests before you can grant relief on the writ. Robertson, Thank you, Your Honor. Now, we took you over time, but why don't we put two minutes on the clock for you? I think the panel touched upon really everything I would have except for one particular matter, and that is opposing counsel said essentially that the absence of the knife was in there. So it was in there. They were allowed their opportunity to bring that up as part of the theory of the defense. But really, and this is related to one of the uncertified issues, and that is that what was missing is the motivation to lie of the officers. That's what they deprived the jury of. And I think one of the strongest uncertified issues is that during closing, he brings it up, she brings it up, and harps on the fact that there's no evidence that would suggest that there's a motivation to lie. That's where we were denied the opportunity to present. And that's what makes this argument so strong. Thank you very much. Barron v. Stainer now submitted for decision.
judges: Tashima, Rawlinson, Clifton